UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN TKACHIK,

    Plaintiff,

v.                                                                     Case No. 05-72703
                                                                 Hon. Sean F. Cox

COMERICA INCORPORATED;
STANDARD FEDERAL BANK, N.A.;
and FRANK MANDEVILLE,

    Defendants.
_____

**OPINION AND ORDER**

      This matter is before the Court on Defendant Comerica's Motion for interpleader, *etc*.; Defendant Standard Federal's Motion to dismiss; Defendant/Cross Plaintiff Frank Mandeville's Concurrence in Defendants' Standard Federal Bank and Comerica, Inc.'s Motion to Dismiss and Defendant Mandeville's Motion for Summary Judgment; Plaintiff's Motion for Summary Judgment; and Defendant Comerica's Motion for award of reasonable attorney's fees.  All parties have fully briefed the issues and a hearing was held December 18, 2006.  For the following reasons, the Court **GRANTS** Defendant/Cross Plaintiff Frank Mandeville's Motion for summary judgment; **DENIES** Plaintiff's Motion for summary judgment; **DENIES** Defendant Standard Federal's Motion to dismiss; **MOOTS** Defendant Comerica's Motion for interpleader, *etc*.; and **DENIES** Defendant Comerica's Motion for award of reasonable attorney's fees.

## I.   BACKGROUND

This action arises out of a dispute regarding who is the proper beneficiary of the decedent Janet Mandeville's benefit packages from Comerica, Inc. ("Comerica"), and Standard Federal Bank ("Standard Federal")(n/k/a LaSalle Bank).

Janet Mandeville was employed at various times by Defendants Comerica and Standard Federal. Through her employment, Janet acquired a "benefit package" with Comerica and Standard Federal. The benefit packages were assignable to a named beneficiary in the event of Janet Mandeville's death. Janet Mandeville named her husband, Defendant Frank Mandeville as the beneficiary.

Janet and Frank Mandeville's marriage deteriorated. Frank Mandeville was out of the country for eighteen months prior to Janet Mandeville's death and did not communicate with her during that time.

On June 27, 2002, shortly before her death, Janet Mandeville executed a living trust and a last will and testament. Both documents provided that nothing was to go to her estranged husband, Frank Mandeville. Janet Mandeville also signed forms to change the beneficiary of her benefit packages with Comerica and Standard Federal from Frank Mandeville to her sister, Plaintiff Susan Tkachik. Plaintiff is also the personal representative of Janet Mandeville's estate.

In order to change the beneficiary, spousal consent is required. The change of beneficiary form signed by Janet Mandeville for Standard Federal did not include Frank Mandeville's consent. Janet Mandeville also signed a change of beneficiary form to transfer her assets with Comerica. The Comerica form was allegedly signed by Frank Mandeville, but the signature was not dated or notarized and Frank Mandeville denies he signed the form. Janet Mandeville died

from breast cancer on July 13, 2002.

Following Janet Mandeville's death, Plaintiff requested Janet Mandeville's benefit packages with Comerica and Standard Federal be disbursed to her.  The change of beneficiary form signed by Janet Mandeville was submitted to Standard Federal in December 2002. Standard Federal replied by letter on March 18, 2003.  Standard Federal had already disbursed the benefit package to Frank Mandeville on August 6, 2002.  It advised Plaintiff that the change of beneficiary designation was invalid without spousal consent.  Standard Federal also advised Plaintiff that she could pursue an administrative appeal.  Plaintiff did not appeal.

Comerica did not disburse the benefit package and did not issue a formal denial.  It is awaiting the outcome of the instant litigation.  Comerica seeks by motion to be allowed interpleader as it claims it has no substantive interest in the litigation.

On October 8, 2003, the Macomb County Probate Court issued an order granting summary judgment determining that Defendant Frank Mandeville is not a "surviving spouse" of Janet Mandeville for purposes of Michigan's intestate succession laws.  The Probate Court found that Frank Mandeville was absent from his spouse for more than one year, and therefore could not contest her trust, pursuant to MCL 700.2801(2)(e)(i).

On July 8, 2005, Plaintiff filed a Complaint with this Court.  An Amended Complaint was filed October 13, 2005, alleging: (1) breach of contract by Comerica and Standard Federal; (2) seeking declaratory relief against Comerica, Standard Federal, and Frank Mandeville; and (3) breach of fiduciary duty against Standard Federal.  Plaintiff claims her action is brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 USC §1001, *et seq*.  On January 3, 2006, Defendant Frank Mandeville filed a Crossclaim against Comerica seeking payment of

Janet Mandeville's benefit package.

Several motions are pending. On June 14, 2006, Standard Federal filed a Motion to dismiss. Comerica field a Motion for interpleader; to dismiss; and for summary judgment on June 16, 2006. On June 30, 2006, Defendant Frank Mandeville filed a concurrence in Standard Federal and Comerica's Motions to dismiss and his own Motion for summary judgment. On August 14, 2006, Plaintiff filed a Motion for summary judgment against all Defendants. Lastly, on August 30, 2006, Comerica filed a Motion for award of reasonable attorney's fees.

## II.   STANDARD OF REVIEW

"[A] complaint may be dismissed for failure to state a claim upon which relief can be granted. The court must construe the complaint in a light most favorable to the plaintiff, and accept all of her factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)(citation omitted).

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate

principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. ANALYSIS

#### A. Is Plaintiff's Claim Styled "Breach of Contract" Preempted by ERISA?

Defendants argue that Count I of the Amended Complaint, titled "breach of contract," is preempted by ERISA. Plaintiff contends that despite her reference to the elements of breach of contract, the claim is actually one for wrongful denial of benefits under 29 USC §1132(a)(1)(B). Plaintiff directs the Court to ¶61 of the Amended Complaint which states that Standard Federal and Comerica allegedly failed to honor the benefit plan when they refused to assign the benefits to Plaintiff, the rightful beneficiary. With respect to Standard Federal, Plaintiff asserts that this claim is in the alternative of her claim for breach of fiduciary duty.

"[T]he fundamental tenor of the [Federal Rules of Civil Procedure] is one of liberality rather than technicality..." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). The court construes pleadings liberally as part of a notice-pleading regime. *Id*.

Plaintiff's pleading, though inartful, nonetheless gives fair notice to Comerica and Standard Federal of her claims. Thus, Defendants are not entitled to dismissal of Plaintiff's ERISA claim for wrongful denial of benefits.

#### B. Are Plaintiff's Claims Barred for Failure to Administratively Exhaust?

Although ERISA does not explicitly require exhaustion, ERISA does require benefit plans to provide internal dispute resolution procedures. *Baxter v. C.A. Muer Corporation*, 941

F.2d 451, 453 (6th Cir. 1991)(citation omitted).  The intent in mandating the internal claims procedures was "to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." *Id*. (citing *Makar v. Health Care Corporation of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989)).  Further, the exhaustion requirement enables plan fiduciaries to "efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id*.  Thus, courts generally require a participant to exhaust his or her administrative remedies prior to commencing suit in federal court. *Id*.  But, "the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has abused its discretion." *Id*. at 453.

There is no dispute here that Plaintiff did not exhaust her administrative remedies.  Standard Federal sent a letter to Plaintiff's previous counsel on March 18, 2003, indicating that it would not honor the change of beneficiary form it received on December 24, 2002 (dated June 27, 2002) because the required spousal waiver was absent. [First Amended Complaint, Exhibit H].  The letter noted that Plaintiff could appeal the decision in accordance with the benefit plan's appeal procedure, which was enclosed. *Id*.  Plaintiff did not file an appeal.  Comerica apparently did not respond to Plaintiff's demand.  Rather, Comerica refused to pay benefits to Frank Mandeville or Plaintiff until the dispute is resolved.  Plaintiff made no attempts to appeal.

Plaintiff contends administrative appeal would be futile.  "[A] court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mutual Insurance*

*Company*, 162 F.3d 410, 419 (6th Cir. 1998)(citing *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether clear and positive indication of futility can be made." *Id*. "A plaintiff must show that it is certain that [her] claims will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision." *Id*. "The futility exception is quite restricted and has been applied only where resort to administrative remedies is clearly useless." *Id*. (citing *Communications Workers of America v. AT&T*, 40 F.3d 426 (D.C.Cir. 1994)).

        **1.**        **Would Appeal to Standard Federal be Futile?**

Plaintiff argues that appeal to Standard Federal would be futile because she is not challenging Standard Federal's determination that consent was absent. Instead, she is challenging whether Frank Mandeville can be considered a surviving spouse in accordance with the benefit plan where he was found not to be a "surviving spouse" by a state probate court with regard to intestate succession. Plaintiff contends that Standard Federal refused to consider the Probate Court's Order noting "Standard Federal would not even take account of the factual finding that Frank Mandeville was willfully absent from his marriage for over one year, a factual determination which should be considered when considering whether Frank Mandeville abandoned his wife under ERISA." [Doc. 31, p.4]. Plaintiff goes on to argue, without reference to authority, that Standard Federal may not determine who is a surviving spouse because that determination rests with state law. *Id*. at p.5.

Plaintiff submitted the change of beneficiary form to Standard Federal after Janet Mandeville's death. Standard Federal issued a letter on March 18, 2003 informing Plaintiff that it would not honor the change of beneficiary form. Standard Federal stated that Plaintiff "now

7

requested the placement of a hold on the Plan benefits now held in Mr. Mandeville's name pending a determination by a Michigan State Court that is presently reviewing claims relating to the estate of Janet Mandeville." [First Amended Complaint, Exhibit H].  Standard Federal concluded that based on court precedent, "it is our position that the Plan can not be bound by any finding of the Michigan State Court that would require a result that is inconsistent with or contrary to the provisions of the plan document and that any finding of the Michigan Court would necessarily be preempted by ERISA."  *Id*.

What Plaintiff challenges is Standard Federal's definition of the term "surviving spouse" in the application of its benefit plan.  Plaintiff contends that for purposes of ERISA, the definition used in Michigan intestacy law to define a surviving spouse should be applied, particularly in this case where a probate court has made a ruling regarding the status of an individual as a surviving spouse.  It is not clear whether Standard Federal actually considered whether the probate court ruling is inconsistent with or contrary to the benefit plan, or whether it considered if spousal consent was required in this case in light of Frank Mandeville's absence.  However, Plaintiff does provide an affidavit averring that sometime prior to March 18, 2003, she met with Sylvia Baker ("Baker"), the Vice President of Standard Federal's Human Resource and Benefits division. [First Amended Complaint, Exhibit G].  Plaintiff claims she told Baker that Frank Mandeville had abandoned Janet Mandeville and that his whereabouts were unknown for a year and a half prior to Janet's death.  *Id*.  Allegedly, Plaintiff was advised that Standard Federal would not transfer Janet Mandeville's benefits until her estate was probated, and would not assign the benefits without a court order requiring them to do so.  *Id*.

It would be futile to require Plaintiff to administratively appeal Standard Federal's

decision. Taking facts and drawing inferences in Plaintiff's favor, Standard Federal was aware of the pending probate court litigation and Plaintiff's assertions that Frank Mandeville abandoned Janet Mandeville and his whereabouts were unknown for more than a year prior to her death. Yet, it implicitly determined that spousal consent was nonetheless required by failing to honor the change of beneficiary form without Frank Mandeville's consent. Moreover, Standard Federal denied that it is bound by the state probate court ruling that Frank Mandeville is not a surviving spouse for purposes of intestate succession. And, Standard Federal had already disbursed the benefits to Frank Mandeville. Appeal would be futile in this case. Additionally, it is clear from Standard Federal's positive indication that based on its interpretation of Supreme Court and Sixth Circuit precedent it is not required to abide by a Michigan state court decision, that the subsequent ruling by the probate court would not result in a different decision.

Moreover, at the hearing, counsel for Standard Federal stated that a change of beneficiary cannot be done after the death of the plan participant. Thus, any attempt to change the beneficiary after the death of Janet Mandeville would be futile.

### 2. Would Appeal to Comerica be Futile?

Comerica seeks summary judgment for failure to exhaust administrative remedies only as to Count II. Plaintiff's Count II seeks declaratory relief asking this Court to declare Plaintiff the beneficiary of Janet Mandeville's benefits package with Comerica and to declare that Frank Mandeville does not have an interest. [First Amended Complaint, ¶¶77-78].

This issue cannot be determined from the facts provided. It is unclear exactly what accounts Janet Mandeville has with Comerica that are in dispute. In an affidavit provided by Cynthia Mitchell, a Benefits Specialist at Comerica, Plaintiff only presented a claim for death

benefits from Janet Mandeville's account in the "Comerica Incorporated Preferred Savings Plan." [Doc. 28, Exhibit 1]. Comerica claims Plaintiff never claimed an interest in life insurance or pension accounts. However, attached to the First Amended Complaint, Plaintiff includes a change of beneficiary form that includes Janet Mandeville's belief that she changed the beneficiary on her pension, 401K, profit sharing plan, and any other benefit held by Comerica. [First Amended Complaint, Exhibit C]. Comerica failed to make any determination regarding Janet Mandeville's benefits as to Plaintiff or Frank Mandeville.

The Court is without sufficient information to determine what accounts are at issue, whether Plaintiff presented a claim for those benefits, and what Comerica's response was. The Court cannot rule on whether it would be futile for Plaintiff to exhaust her administrative remedies.

        **C.**     **Cross Motions for Summary Judgement on the Merits**

Defendant Frank Mandeville moves for summary judgment on Plaintiff's claim that she is the beneficiary of Janet Mandeville's benefit packages with Standard Federal and Comerica. Defendant Mandeville argues that the change of beneficiary was invalid without his consent. Further, Defendant Mandeville asserts that the probate court order is limited and inapplicable in this case. Lastly, he contends that even if the findings of the probate court order and Plaintiff's affidavit are true, it was incumbent on the plan participant, *i.e*. Janet Mandeville, to make a showing that his consent was unnecessary. Because Janet Mandeville never argued she was abandoned or was unable to locate Defendant Mandeville, Defendant Mandeville alleges Plaintiff's claims are untimely.

Plaintiff argues first that Defendant Mandeville is not a surviving spouse because the

definition of "surviving spouse" as used in ERISA must rely on state law. Plaintiff concludes that the definition of "surviving spouse" used in Michigan's intestacy laws is the applicable state law definition. Because Defendant Mandeville was adjudged not to be a surviving spouse under Michigan intestacy laws by the Macomb County Probate Court, he is likewise not a surviving spouse for purposes of ERISA and his consent was therefore not required for Janet Mandeville to change her beneficiary. Plaintiff argues that at the very least, if the Court is not bound by the Probate Court's Order, the factual finding that Frank Mandeville was willfully absent from Janet Mandeville for at least a year preceding her death should be given preclusive effect. Plaintiff contends that taking the judgment of the Probate Court, in addition to the change of beneficiary forms completed by Janet Mandeville, there was timely literal compliance with 29 USC §1055(c)(2)(B):

>    (c)   Plans meeting requirements of section
>    ...
>
>    (2)   Each plan shall provide that an election under paragraph (1)(A)(i) shall not take effect unless -
>
>    (B)   It is established to the satisfaction of a plan representative that the consent required under subparagraph (A) may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary of Treasury may be regulations prescribe.

In the alternative, Plaintiff argues that Janet Mandeville substantially complied with ERISA. Plaintiff does not direct the Court to any authority that the doctrine of substantial compliance is applicable to 29 USC §1055. Plaintiff does cite cases where the doctrine was applied, but it was only with regard to 29 USC §1133 which deals with notice requirements plan administrators must follow to notify a participant or beneficiary of a denial of a claim. Plaintiff

concludes that by analogy, the doctrine of substantial compliance is also applicable where a participant attempts to notify the plan administrator of a change of beneficiary.

Plaintiff's argument is without merit. Even if the Court were to apply substantial compliance, Janet Mandeville did not substantially comply. Plaintiff contends that Janet Mandeville could not fully comply because of time constraints, as she signed the change of beneficiary forms two weeks prior to her death. However, the change of beneficiary form submitted to Comerica included Frank Mandeville's alleged signature. At the hearing, Plaintiff's counsel speculated that the form was signed in 1994. Taking the facts as alleged by Plaintiff, Janet Mandeville did not have contact or know the whereabouts of Frank Mandeville for 18 months prior to her death. Assuming the signature is that of Frank Mandeville, Janet Mandeville started the process of changing the beneficiary well over a year prior to her death. Thus, there was ample time to comply with the procedural requirements such that the Court should not resort to the doctrine of substantial compliance, assuming *arguendo* that it is applicable.

In Plaintiff's Motion for summary judgment, she claims she is entitled to summary judgment on several grounds. First, she contends that Frank Mandeville's consent was not necessary for Janet Mandeville to change her beneficiary because Frank Mandeville was not a "surviving spouse" within the meaning of ERISA. Plaintiff relies on the definition of "surviving spouse" set forth in Michigan intestacy laws. Second, Plaintiff contends that if Frank Mandeville is found to be Janet Mandeville's "surviving spouse," his consent was still not necessary pursuant to 29 USC §1055(c)(2)(B) and 26 CFR §1.401(a)-20 because he abandoned Janet Mandeville and because he could not be located.

    **1.  Is Frank Mandeville a "surviving spouse" for purposes of ERISA?**

ERISA does not define the term "spouse." When a statute leaves a term undefined and the term has an "accumulated settled meaning" under the common law, there is a presumption that Congress meant to incorporate the common law definition into the statute. *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998)(citing *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992).

Rather than look to federal common law, Plaintiff asks the Court to look to Michigan law. Specifically, Plaintiff argues the Court should apply the definition of surviving spouse used in MCL 700.2801:

> (1) An individual who is divorced from the decedent or whose marriage to the decedent has been annulled is not a surviving spouse unless, by virtue of a subsequent marriage, he or she is married to the decedent at the time of death. A decree of separation that does not terminate the status of husband and wife is not a divorce for purposes of this section.
>
> (2) For purposes of parts 1 to 4 of this article and of section 3203, a surviving spouse does not include any of the following:
>
> (a) An individual who obtains or consents to a final decree or judgment of divorce from the decedent or an annulment of their marriage, which decree or judgment is not recognized as valid in this state, unless they subsequently participate in a marriage ceremony purporting to marry each to the other or live together as husband and wife.
> (b) An individual who, following an invalid decree or judgment of divorce or annulment obtained by the decedent, participates in a marriage ceremony with a third individual.
> (c) An individual who was a party to a valid proceeding concluding by an order purporting to terminate all marital property rights.
> (d) An individual who, at the time of the decedent's death, is living in a bigamous relationship with another individual.
> (e) An individual who did any of the following for 1 year or more before the death of the deceased person:
>
>> (i)  Was willfully absent from the decedent spouse.
>> (ii)  Deserted the decedent spouse.
>> (iii) Willfully neglected or refused to provide support for the decedent

spouse if required to do so by law.

The Supreme Court gives some direction regarding when to look to state law to define a term in a federal statute:

> Congress sometimes intends that a statutory term be given content by the application of state law. We start, however, with the general assumption that 'in the absence of a plain indication to the contrary,...Congress when it enacts a statute is not making the application of the federal act dependent on state law.' One reason for this rule of construction is that federal statutes are generally intended to have uniform nationwide application. Accordingly, **the cases in which we have found that Congress intended a state-law definition of a statutory term have often been those where uniformity clearly was not intended**.

*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989)(emphasis added). Uniformity is a "vital component of the ERISA framework." *DaimlerChrysler Corporation v. Durden*, 448 F.3d 918, 928 (6th Cir. 2006).

In this case, there is federal common law, or an "accumulated settled meaning" of the term "spouse" for purposes of ERISA. A spouse is "[o]ne's husband or wife by legal marriage." *Williams v. Board of Trustees of the International Longshoremen's Association*, 388 F.Supp.2d 1353, 1365 (S.D.Fl. 2005). See *Gallagher v. Park West Bank and Trust Co.*, 921 F.Supp. 867, 877 (D.Mass. 1996) and *Davis v. College Suppliers Company*, 813 F.Supp. 1234, 1237 (S.D.Miss. 1993)("[T]he common law meaning of spouse is settled, straightforward, and dispositive: spouse means a man or woman joined in wedlock, in short, one's husband or wife.")(both citing *Kahn v. Kahn*, 801 F.Supp. 1237, 1241 (S.D.N.Y. 1992)). See also *Croskey v. Ford Motor Company UAW*, 2002 WL 974827, *4 (S.D.N.Y. 2002)("[A]ll federal courts to have considered the issue have determined that the [ERISA] term 'spouse' refers to the legal spouse.").

Thus, for purposes of ERISA, the term "surviving spouse" refers to the person the participant is legally married to at the time of their death. Resort to state law to determine what is meant by "surviving spouse" is unnecessary. However, determining *who* the participant is legally married to is dependent on state law because there is no federal common-law with respect to marriage. The ERISA pre-emption provision was intended to "displace all state laws that fall within its sphere..." *Metropolitan Life Ins. Co. v. Massachusetts Traveler's Ins. Co.*, 471 U.S. 724, 739 (1985). However, the court also presumes that "Congress did not intend to pre-empt areas of traditional state regulation." *Id*. at 740. In this case, whether Frank Mandeville is a "surviving spouse" for purposes of ERISA depends on whether he was legally married to Janet Mandeville at the time of her death.

The definition of "surviving spouse" set forth in MCL 700.2801 is inapplicable to this determination. By its own terms, that definition only applies to "parts 1 to 4 of this article and of section 3203." A ruling that an individual is not a "surviving spouse" under MCL 700.2801 does not extinguish the legal marital relationship.

Nonetheless, the factual finding that Frank Mandeville was willfully absent from Janet Mandeville for at least one year prior to her death is binding. But, Plaintiff does not offer any evidence that such a finding terminates the legal marital relationship. Plaintiff does not provide the Court with any Michigan domestic relations law supporting the proposition that Frank Mandeville was not legally married to Janet Mandeville at the time of her death. It is undisputed that Frank and Janet Mandeville were married. Janet Mandeville considered herself to be married to Frank Mandeville as late as June 28, 2002, when she wrote a letter to Comerica seeking to change her beneficiary. [Plaintiff's Motion, Exhibit F].

Plaintiff contends that whether parties were legally married is not the *sine qua non* of whether an individual is a surviving spouse for purposes of ERISA. Plaintiff points to "slayer statutes" which provide that a spouse who kills the participant spouse is not entitled to the deceased participant spouse's ERISA benefits. In the cases cited by Plaintiff, the courts relied on equitable principles. [Plaintiff's Motion, p.7]. The equitable principles behind the "slayer" exception are not applicable here. First, it is axiomatic that one cannot be allowed to profit from his own wrongs. *Illinois v. Allen*, 397 U.S. 337, 350 (1970). There is no indication that Frank Mandeville committed a "wrong" that is commensurate with murder. Further, where one spouse kills the other, there is presumably no prior warning. So, the court may equitably deem that the deceased spouse did not intend that the slayer spouse should receive ERISA benefits. The same considerations are not present where the participant spouse is abandoned. In fact, ERISA explicitly sets forth the procedure for changing a beneficiary in such a situation. There is no reason why Janet Mandeville could not have complied with the procedural requirements to change her beneficiary. From the documents submitted with Plaintiff's Motion, it appears Janet Mandeville attempted to obtain Frank Mandeville's consent sometime prior to the abandonment. [Plaintiff's Motion, Exhibit F]. Plaintiff's counsel speculated the change of beneficiary form for Comerica may have been signed by Frank Mandeville as early as 1994. The fact that Frank Mandeville may have abandoned Janet Mandeville, did not obviate the requirement that she either obtain his consent, or comply with other procedural requirements, in order to change her beneficiary.

Accordingly, because it is undisputed that Frank and Janet Mandeville were legally married, and Plaintiff fails to offer any evidence that the marriage was legally terminated,

16

Defendant Frank Mandeville is Janet Mandeville's surviving spouse at the time of her death for purposes of ERISA.

### 2. Was Frank Mandeville's consent necessary to change beneficiaries on Janet Mandeville's benefit plans in light of 29 USC §1055(c)(2)(B) and 26 CFR §1.401(a)-20?

Plaintiff contends that even if Frank Mandeville is Janet Mandeville's surviving spouse for purposes of ERISA, his consent was not necessary to change her beneficiary. Plaintiff relies on Secretary of Treasury regulation 26 CFR §1.401(a)-20:

> Q-27: Are there circumstances when spousal consent to a participant's election to waive the QJSA or the QPSA is not required?
>
> A-27: Yes. If it is established to the satisfaction of a plan representative that there is no spouse or that the spouse cannot be located, spousal consent to waive the QJSA or the QPSA is not required. If the spouse is legally incompetent to give consent, the spouse's legal guardian, even if the guardian is a participant, may give consent. Also, if the participant is legally separated or the participant has been abandoned (within the meaning of local law) and the participant has a court order to such effect, spousal consent is not required unless a QDRO provides otherwise.

Plaintiff relies on the probate court order that Frank Mandeville was willfully absent from Janet Mandeville for a year or more prior to her death to satisfy the requirement that the participant was abandoned within the meaning of local law. However, Plaintiff ignores the language in the regulation requiring that "**the participant** has a court order to such effect" (emphasis added). It is undisputed here that the participant, Janet Mandeville, did not have a court order stating she had been abandoned. The probate court order relied on by Plaintiff was issued after Janet Mandeville's death. [Plaintiff's Motion, Exhibit A]. Additionally, Plaintiff does not direct the Court to any authority that Frank Mandeville's absence constitutes abandonment "within the meaning of local law."

Moreover, an attempt to change the beneficiary after the death of the participant is untimely. "ERISA provides that a participant's election to waive the surviving spouse pension - whether or not consented to by the spouse - must be made during the 'applicable election period,' 29 USC §1055(c)(1)(A)(i), a period that 'ends on the date of the participant's death,' 29 USC §1055(c)(7)(B). *Davenport v. Davenport*, 146 F.Supp.2d 770, 781 (M.D.N.C. 2001). In *Davenport*, the court specifically held that an attempt by the estate of the deceased participant to obtain a court order of abandonment would serve no purpose because "post-death issuance of an abandonment order would not be valid under ERISA..." *Id*. at 780-781.

Additionally, Plaintiff's claim that Frank Mandeville's consent was unnecessary because he could not be located is also untimely. First, that fact was not established to the satisfaction of a plan representative. See 26 CFR §1.401(a)-20. Second, as discussed above, any posthumous attempt to change the beneficiary on Janet Mandeville's benefit plans is untimely.

Accordingly, Frank Mandeville is entitled to summary judgment on Plaintiff's claims of entitlement to Janet Mandeville's benefit plans with Defendants Comerica and Standard Federal. Frank Mandeville is the beneficiary of Janet Mandeville's benefit packages with Comerica and Standard Federal.

Because this disposes of the claims, the Court does not reach Comerica's Motion for interpleader. The Court denies Comerica's request for attorney's fees.

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant/Cross Plaintiff Frank Mandeville's Motion for summary judgment; **DENIES** Plaintiff's Motion for summary judgment; **DENIES** Defendant Standard Federal's Motion to dismiss; **MOOTS** Defendant

18

Comerica's Motion for interpleader, *etc.*; and **DENIES** Defendant Comerica's Motion for award of reasonable attorney's fees.

    **IT IS SO ORDERED.**

                        S/Sean F. Cox
                        **Sean F. Cox**
                        **United States District Judge**

**Dated:  December 26, 2006**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on December 26, 2006, by electronic and/or ordinary mail.**

                        S/Jennifer Hernandez
                        **Case Manager**